**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **EXPORT DEVELOPMENT CANADA,** | ) | |
|     **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION: 1:20-00599-KD-B** |
| | ) | |
| **SHORE ACRES PLANT FARM, INC.,** | ) | |
|     **Defendant.** | ) | |

**ORDER**

This matter is before the Court on Plaintiff's Rule 55(b)(2) motion for entry of a default judgment[1] against the Defendant. (Doc. 13).

## I.   <u>Background</u>

As alleged by Plaintiff Export Development Canada (EDC),[2] on November 11, 2019 non-party Qualitree Propagators, Inc. (Qualitree)[3] executed a credit agreement with Defendant Shore Acres Plant Farm, Inc. (Shore Acres) for a $150,000 credit limit.[4]  The credit agreement provides:

> 1) This is an Application and Agreement for credit and shall apply to any and all credit extended by Qualitree Propagators Inc.
>
> 2) If credit is extended, applicant promises to pay the amount due, as evidenced  by the account (including interest charges), within terms, unless prior written arrangements  have been negotiated. An interest rate of 1.5%  per month  (19.56%  per annum) will be applied to any unpaid  or outstanding  balance.  C.O.D. where credit has not been established.
>
> 3) NSF cheques will be subject to a $25.00 charge.

---

[1]  EDC does not move for entry of a default judgment on its claims for account stated (Count III) and/or restitution/quasi-contract (Count IV).  However, because EDC seeks a final ruling and entry of judgment, the Court presumes EDC has **ABANDONED** Counts III and IV and they are deemed so.

[2] A Canadian corporation which provides insurance coverage against non-payment to Canadian exporters selling goods on credit to US buyers.  (Doc. 1 at 3; Doc. 13-2 at 2 (Decltn. Rozendaal)).

[3] A Canadian manufacturer/seller of agricultural products including plants.  (Doc. 1 at 3).

[4] An Alabama corporation that sells agricultural products including trees and plants. (Doc. 1 at 4).

4) It is understood that credit privileges may be revoked in the event charges are not paid within the agreed-upon credit period. Title and ownership of goods purchased does not pass until goods are paid for in full.

5) Signing the application below authorizes Qualitree to obtain credit reports, bank reports and any other information as may be deemed   necessary in connection   with the establishment  and maintenance of a credit account.

6) Signing this agreement authorizes the bank and trade references to release any information necessary to assist in establishing a line of credit.

7) Applicant signing this agreement acknowledges that he/she has full authority to act as agent for the party in whose name this application is placed.

8) Applicant signing this agreement agrees to bear all costs incurred in collecting  any unpaid amounts including but not limited to collection suit fees, legal fees and court costs.

9) Applicant signing this agreement agrees to notify Qualitree Propagators Inc. promptly of any changes in ownership of the business and agrees to liability for all charges to the business conducted under the account named until Qualitree  Propagators  Inc. receive written notice of a change in ownership of that business.

10) Applicant signing this agreement has read, understood and accepted all of these terms.

(Doc. 1-1).  Shore Acres' President Oliver Washington signed the contract in Alabama.

Per EDC, between November 22-27, 2019, Shore Acres ordered $275,981.89 of agricultural goods from Qualitree.  (Doc. 1 at 2; Doc. 13-2 (Decltn. Rozendaal)).  Qualitree sent the goods to Shore Acres, who accepted same.  (Doc. 1 at 4). Qualitree then issued invoices to Shore Acres indicating payment was due in January 2020.  (Doc. 1-2; Doc. 13-2 (Decltn. Rozendaal); Docs. 13-4 to 13-5)).  Shore Acres failed to pay for the goods.  (Id.)

As further alleged by EDC, EDC is Qualitree's insurer under a credit insurance policy executed between them.  (Doc. 1).  Due to Shore Acres' non-payment to Qualitree, EDC made an insurance payment to Qualitree for the goods.  (Id. at 1-2).  Per EDC, in exchange for that payment, Qualitree then assigned all rights, title, and interest in its claims against Shore Acres for those goods, to EDC.  Per Qualitree's CEO: "EDC made an insurance payment to Qualitree for the Goods ... under a credit insurance policy between EDC and Qualitree. In exchange, Qualitree assigned all right, title, and interest in its claims

against Shore Acres in relation to the subject matter of this action, including the unpaid Goods, to EDC." (Doc. 13-2 at 2 (Decltn. Rozendaal)). Thus, EDC asserts it is the assignee of Qualitree's claims.[5]

On December 16, 2020, EDC initiated this diversity subject matter jurisdiction action against Shore Acres for non-payment of goods, alleging money damages "pursuant to" Alabama's *Uniform Commercial Code*, and "alternatively" for breach of contract, account stated, and restitution. (Doc. 1 at 1). Specifically, EDC asserts the following claims: 1) action for the price; 2) breach of contract; 3) account stated; and 4) restitution/quasi-contract. (Doc. 1 at 5-8).

On December 17, 2020, the summonses issued. (Doc. 4). On December 22, 2020, EDC submitted the executed summons asserting that Shore Acres was properly served on December 19, 2020 via personal service on individual Oliver Washington as the registered agent for service of process for Shore Acres. (Doc. 7). Shore Acres then had 21 days from receipt of service within which to plead or otherwise defend. As of January 13, 2021, Shore Acres had failed to plead or otherwise defend and thus, EDC moved for entry of a Fed.R.Civ.P. Rule 55(a) Clerk's default (supported by the Declaration of Sean J. Lowe (counsel)), which was granted. (Docs. 9, 10).

On January 28, 2021, two (2) attorneys filed notices of appearances for Shore Acres. (Docs. 11, 12). However, no answer or response to EDC's Complaint was filed. EDC explains that it communicated with counsel for Shores Acres after they filed the appearances. (Doc. 13-6 (Decltn. Lowe); Doc. 13-8 (emails between counsel)). However, per EDC, since that time "Shore Acres has declined EDC's efforts to secure stipulation to vacate the default and has stopped responding to EDC's counsel." (Doc. 13-1 at 1; Doc. 13-6 (Decltn. Lowe)). As alleged by EDC, because Shore Acres stopped responding to EDC's attempts to communicate, it now seeks entry of a default judgment against Shore Acres in the amount of **$334,644.07** (comprised of $275,981.89 due based on non-payment for goods sold, plus pre-judgment

---

[5] While EDC has not submitted a copy of the assignment, because the Court views the well-pleaded facts in the complaint as admitted by the Defendant on review of a motion for default judgment, the undersigned is satisfied that EDC stands in the shoes of Qualitree as an assignee such that it can pursue the claims in this case related to the Qualitree-Shore Acres transaction(s).

interest of $54,240.18, $502.00 in costs, and $3,920.00 in attorneys' fees).  (Doc. 13; Doc. 13-6 (Decltn. Lowe)).

## II.  **Standard of Review**

The Federal Rules of Civil Procedure establish a two-part process for obtaining a default judgment. Fed.R.Civ.P. 55. If "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed.R.Civ.P. 55(a). After default has been entered, if the "claim is for a sum certain or a sum that can be made certain by computation" the clerk must enter default judgment. Fed.R.Civ.P. 55(b)(1). In all other circumstances, such as here, "the party must apply to the court for a default judgment." Fed.R.Civ.P. 55(b)(2).

As noted *supra*, a default has already been entered against Shore Acres.  Thus, EDC has satisfied the first part of the process.  EDC now seeks default judgment under Rule 55(b).

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides, in relevant part, as follows with regard to entering a default judgment:

(b) Entering a Default Judgment.
                                * * *
*(2) By the Court.* In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:

      (A) conduct an accounting;
      (B) determine the amount of damages;
      (C) establish the truth of any allegation by evidence; or
      (D) investigate any other matter.

FED.R.CIV.P. 55(b)(2).

The Eleventh Circuit has held that although "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover, a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact. The defendant, however, is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Tyco Fire & Sec., LLC v. Alcocer*, 218 Fed. Appx. 860, 863 (11th Cir. 2007) (citations and internal quotations omitted). Moreover, "before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations of the complaint ... actually state a cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Id.* (emphasis omitted). Therefore, Plaintiff must establish a "prima facie liability case" against the defendant. *Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1357 (S.D. Ga. 2004) (citations omitted). Further, when assessing damages, the Court has "an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). Overall, "there is a strong policy of determining cases on their merits" and therefore defaults are viewed "with disfavor." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003). "Since this case involves a default judgment there must be strict compliance with the legal prerequisites establishing the court's power to render the judgment." *Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. and Canada*, 674 F.2d 1365, 1369 (11th Cir. 1982). "[A]llegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.*, 75 F.Supp.2d 1342, 1346 (M.D. Fla. 1999).

### III.  **Discussion**

EDC moves for entry of a default judgment against Shore Acres due to its failure to plead or otherwise defend, and due to having obtained a Clerk's entry of default against it.[6]  As an initial matter, the Court is satisfied that EDC has notified Shore Acres of the motion for entry of default judgment via

---

[6] In support of its motion, EDC has submitted the Declaration of Qualitree's CEO Gerrit Rozendaal (Doc. 13-2), the Declaration of Sean J. Lowe (Doc. 13-6), a copy of the Credit Agreement (Doc. 13-1), invoices billed to Qualitree (Docs. 13-4 and 13-5), and communications with counsel (Doc. 13-8).

service to counsel who have appeared on its behalf.  (Doc. 13 at 3).  Additionally, a Clerk's Rule 55(a) default has already been entered against Shore Acres for failure to plead, answer or otherwise defend. Moreover, EDC seeks an award of **$334,644.07** (comprised of $275,981.89 due based on non-payment for goods sold, plus pre-judgment interest of $54,240.18 (1.5% of the balance due), post-judgment interest at the 1.5% interest rate, $502.00 in costs, and $3,920.00 in attorneys' fees).  (Doc. 13-1 at 7-10).  As such, there appears to be a sum which can be made certain or ascertainable before the Court, from which a default judgment can be entered without a hearing. Securities and Exchange Commission v. Smyth, 420 F.3d 1225, 1231-1232 (11th Cir. 2005) ("Judgment of default awarding cash damages could not properly be entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation) (internal quotes and citations omitted).

As to the merits and EDC's burden of establishing a prima facie case against Shore Acres, the Court may enter a default judgment if the well-pleaded allegations of the complaint provide a sufficient legal basis for the cause of action alleged. Nishimatsu Const. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law[]"). In doing so, a court must thus "examine the sufficiency of plaintiff's allegations to determine whether the plaintiff is entitled to" a default judgment. Fidelity & Deposit Co. of Md. v. Williams, 699 F. Supp. 897, 899 (N.D. Ga. 1988).

## A.    **The UCC: "Action for the price"**

EDC seeks default judgment against Shore Acres on its "action for the price" claim per Sections 7-2-709 and 7-2-607(1) of Alabama's UCC.  Section 7-2-709, states as follows:

(1) When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under Section 7-2-710, the price:

(a) Of goods accepted or of conforming goods lost or damaged within a commercially reasonable time after risk of loss has passed to the buyer; and
(b) Of goods identified to the contract if the seller is unable after reasonable effort to resell them at a reasonable price or the circumstances reasonably indicate that such effort will be unavailing.

6

(2) Where the seller sues for the price he must hold for the buyer any goods which have been identified to the contract and are still in his control except that if resale becomes possible he may resell them at any time prior to the collection of the judgment. The net proceeds of any such resale must be credited to the buyer and payment of the judgment entitles him to any goods not resold.

(3) After the buyer has wrongfully rejected or revoked acceptance of the goods or has failed to make a payment due or has repudiated (Section 7-2-610), a seller who is held not entitled to the price under this section shall nevertheless be awarded damages for nonacceptance under Section 7-2-708.

Section 7-2-607(1) states: "(1) The buyer must pay at the contract rate for any goods accepted." EDC's asserted basis for this claim is an alleged contract for the sale of goods, Shore Acres' acceptance of goods, and Shore Acres' non-payment for the goods-- evinced by invoices.

1.    **The Written Credit Agreement**

To support its UCC claim for an "action for the price," EDC cites the credit agreement. However, a credit agreement is not a contract for the sale of goods.  Rather, a credit agreement is an agreement through which a creditor extends a line of credit to a credit recipient -- e.g., Qualitree agreed to extend a $150,000 credit line to Shore Acres. The Qualitree-Shore Acres credit agreement specifies: "[t]his is an Application and Agreement for credit[]" and [i]f credit is extended, applicant promises to pay the amount due[.]"  The credit agreement thus appears to be a *services* agreement -- a contract to render the service of extending a credit line to Shore Acres (*i.e.*, financing).  Thus, the UCC section regarding the sale of goods is inapplicable to a claim under the credit agreement.  NTA Graphics South, Inc. v. Axiom Impressions, LLC, 413 F.Supp.3d 1163, 1173 (S.D. Ala. 2019) ("The UCC applies to contracts for the sale of goods. *See* Ala. Code § 7-2-102 (providing the UCC applies to "transactions in goods"); § 7-2-105 (defining "goods" as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale...."). It does not apply to contracts for the provision of services. *See* § 7-2-102.  "A credit agreement "is 'entirely separate and distinct from the underlying sales contract.'" *See Worldwide Sugar Co. v. Royal Bank of Canada,* 609 F.Supp. 19, 24 (S.D.N.Y.1984) (quoting H.

Harfield, Bank Credits and Acceptances 72 (5th ed.1974)).  Thus, to the extent that EDC moves for default judgment on its UCC "action for the price" claim based on the written credit agreement, the motion is **DENIED.**

### 2.    Oral Contract for the Sale of Goods

Because EDC has failed to submit any written contract for the sale of goods, this leaves its claim for "action for the price" under Section 7-2-709 based on the existence of an oral contract which prompted issuance of the written invoices from Qualitree to Shore Acres.

### a.    Enforceability

As an oral contract for the sale of goods, the Court must first address the Statute of Frauds in Alabama's UCC, Section 7-2-701. Section 7-2-701(1) provides, in relevant part, that "[e]xcept as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action .... unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought ... A writing is not insufficient because it omits or incorrectly states a term agreed upon, but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing." Ala. Code § 7-2-201(1). EDC has not submitted any written contract for the sale of goods, purchase order, or the like.  EDC has only submitted written invoices for goods delivered by Qualitree to Shore Acres. While the written invoices appear to satisfy the statute's requirement of "some writing,"[7] none of these written invoices are signed by Shore Acres (the party against whom enforcement is sought). Thus, Section 7-2-201(1) is inapplicable as the alleged contract does not satisfy subsection (1)'s requirements.

---

[7] Official Comments to Section 7-2-201:  "[t]he required writing need not contain all the material terms of the contract and such material terms as are stated need not be precisely stated. All that is required is that the writing afford a basis for believing that the offered oral evidence rests on a real transaction. It may be written in lead pencil on a scratch pad. It need not indicate which party is the buyer and which the seller. The only term which must appear is the quantity term which need not be accurately stated but recovery is limited to the amount stated. The price, time and place of payment or delivery, the general quality of the goods, or any particular warranties may all be omitted."

However, statutory exceptions exist to the rule requiring "some writing" evidencing the contract. Section 7-2-201(3)(c) provides, in relevant part, that when a contract "does not satisfy the requirements of subsection (1) but ... is valid in other respects[,]" it will be enforceable:

> (c) With respect to goods for which payment has been made and accepted or which have been received and accepted (Section 7-2-606).

Ala. Code § 7-2-201(3)(c).

At the default judgment stage, the well-pleaded allegations of the Complaint are deemed admitted and thus, Shore Acres has admitted that the goods "have been received and accepted."[8] This, coupled with the written invoices showing that Shore Acres was billed for the goods but failed to pay for same, satisfies the Court that Alabama's UCC Statute of Frauds does not bar EDC's ability to enforce the oral contract. The Court is satisfied, based on the well-pleaded allegations of the Complaint and the invoices submitted, that Section 7-2-201(3)(c) applies. See, e.g., Cardinal Health 108, LLC v. Hemacare Plus, Inc., 2017 WL 114405, *10 (S.D. Ala. Jan. 11, 2017) (applying Tennessee's UCC code section which mirrors Alabama's, to conclude that "record reflects that Hemacare placed orders from Cardinal for the products ... Hemacare received the products, Hemacare used the products, and Hemacare partially paid for the products....the products were accompanied with Invoices that included Terms and Conditions of Sale which provided the contractual terms for the transactions. These facts establish an enforceable written contract for the sale of goods in Tennessee and the Statute of Frauds is alternatively satisfied when payment for the goods was received and accepted by Cardinal[]"); Trimble v. Todd, 510 So.2d 810, 811-812 (Ala. 1987) ("[t]he statute provides an exception to the rule requiring a writing evidencing the contract....when those goods have been received and accepted, no written contract is required. Section 7–2–201(3)(c)....it is not disputed that the sale price was over $500.00. Todd delivered the coal...and it was accepted...because Todd met the requirements of the statutory exception, his claim does not fail because of a violation of the statute of

---

[8] EDC alleges that Shore Acres failed to reject the goods and that allegation is deemed admitted on default judgment review.

frauds[]"); Fendley v. Dozier Hardware Co., Inc., 449 So.2d 1236, 1239 (Ala. 1984) ("[u]nder the evidence, the jury could have reasonably concluded that Fendley and Dozier had reached an agreement of purchase and sale regarding the goods and that the goods had been delivered and accepted. Therefore, sufficient evidence was presented .... for Fendley based upon § 7–2–201[]"); Dykes Restaurant Supply, Inc. v. Grimes, 481 So.2d 1149, 1150 (Ala. Civ. App. 1985) (applying the 7-2-201(3)(c) statutory exception to the statute of frauds because "[t]he receipt and acceptance of goods constitutes an unambiguous overt admission that a contract actually exists. Ala. Code (1975), § 7–2–201(3)(c) comment 2[]" and that "the receipt and acceptance of invoices by the defendant, evidencing shipments of goods .... to be additional evidence supporting our finding that a contract existed between the parties[]");

Similarly, Section 7-2-201(2) provides that "[b]etween merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within 10 days after it is received."  Based on the now admitted allegations of the Complaint, Qualitree and Shore Acres are alleged to be merchants, Qualitree sent written invoices for the goods sold to Shore Acres at the time it delivered the goods, Shore Acres received the goods, and there is no indication (or allegation) that Shore Acres lacked any reason to know of the contents and/or that the invoices were not received by Shore Acres.[9] Additionally, there is no evidence of any written notice of objection by Shore Acres, much less one within 10 days of its receipt of any invoice.  As such, Section 7-2-201(2) also appears applicable.  See, e.g., Bostik, Inc. v. Rogers Finishing, LLC, 2009 WL 10668651, *9-10 (N.D. Ga. Dec. 28, 2009) (referencing Georgia's UCC code section 11-2-201(2) (which mirror's Alabama's 7-2-201(2)), and finding that "in a sale of goods between merchants, "'the sales invoices constitute written confirmation of their agreement.'.... Plaintiff and Defendant both are merchants. Plaintiff shipped raw materials to Defendant, and invoiced Defendant ....

---

[9] Official Comments to Section 7-2-201: "[r]eceipt and acceptance either of goods or of the price constitutes an unambiguous overt admission by both parties that a contract actually exists...."

No evidence indicates that Defendant objected .....the transactions at issue are transactions between merchants, and the invoices were sufficient evidence of the agreement between Defendant and Plaintiff. Consequently, the Court finds that enforceable sale contracts existed with respect to the transactions that form the basis of Plaintiff's claim.").

      b.    <u>Liability</u>

As enforceability of the oral contract for the sale of goods has now been established, the Court turns to the issue of liability -- whether Shore Acres is liable to EDC on its UCC claim for "action for the price" due to Shore Acres' failure to pay.  Per Section 7-2-703(e), the seller's remedies for a buyer's breach include, in relevant part, as follows:

> Where the buyer ... fails to make a payment due on .... delivery .... then with respect to any goods directly affected and, if the breach is of the whole contract (Section 7-2-612), then also with respect to the whole undelivered balance, the aggrieved seller may:... (e) Recover damages for ... in a proper case the price (Section 7-2-709)....

<u>Ala</u>. <u>Code</u> § 7-2-703(e).  Section 7-2-709, an "action for the price," provides, in part, as follows:

> (1) When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under Section 7-2-710, the price:
>     (a) Of goods accepted ......

<u>Ala</u>. <u>Code</u> §§ 7-2-709(1)(a).  And Section 7-2-710 provides that "[i]ncidental damages to an aggrieved seller include any ... expenses .... incurred ... otherwise resulting from the breach."  <u>Ala</u>. <u>Code</u> §§ 7-2-710. This means that if Shore Acres is found liable for an action for the price under the UCC, EDC may recover the price of the goods accepted plus incidental damages.

In the Complaint, EDC's UCC action for the price claim alleges as follows:

> 33. Shore Acres and its designees accepted the Goods.
> 34. Shore Acres never rejected the Goods.
> 35. Shore Acres never validly revoked its acceptance of the Goods.
> 36. Prior to the commencement of this action, Qualitree assigned all of its claims against Shore Acres to EDC.
> 37. EDC is entitled to damages against Shore Acres in an amount to be determined at trial but that is expected to exceed $275,981.89, plus interest or late charges of about 1.5% per month under the Agreement and Invoices, or at the maximum rate allowed by law, and EDC's attorneys' fees and costs.

(Doc. 1).   As noted *supra*, at the default judgment stage, Shore Acres is deemed to have *admitted* these well-pleaded allegations -- namely, that it accepted the goods delivered but failed to pay the price when due, and that EDC is entitled to damages for the price of goods accepted as well as incidental damages. Thus, EDC's motion for entry of default judgment against Shore Acres as to its liability for an action for price based on an oral contract for the sale of goods, is **GRANTED.**

**B.      Common Law Breach of Contract**

EDC simultaneously seeks a default judgment on its common law breach of contract claim based on the contention that Shore Acres failed to pay for goods delivered under an oral contract. In support, EDC submits invoices submitted to Shore Acres for the goods delivered and which to date, Shore Acres has not paid.  (Docs. 13-4 and 13-5).[10]

However, EDC has not explained how it can *simultaneously* obtain entry of a default judgment on a UCC "action for the price" claim *and* on a common law breach of contract claim.  And the Court's review of case law indicates, as noted in Security Pest Control v. Wells Fargo Bank, N.A., 2020 WL 3621310, *2 (M.D. Ala. Jul. 2, 2020), that EDC's common law breach of contract claim has been displaced by its UCC action for the price claim:

> Under the UCC, "[u]nless displaced by the particular provisions of this title, the principles of law and equity including the law of merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, and other validating or invalidating cause supplement its provisions." Ala. Code § 7-1-103(b). The Alabama Supreme Court has addressed the test for UCC displacement: "Under § 7-1-103, when a statute provides a cause of action relating to a specific factual situation in a specific manner, then any common-law cause of action based upon a factual situation so materially identical that it is clearly within the specific scope of the provision must be said to have been 'displaced,' especially if it is in some way affirmatively excluded by the statutory language." Am. Liberty Ins. Co. v. AmSouth Bank, 825 So. 2d 786, 794-95 (Ala. 2002). "[C]ommon-law claims are displaced or preempted if allowing the common-law claims would 'create rights, duties, and liabilities inconsistent' with those set forth in [the UCC statutes.]" AmSouth Bank v. Tice, 923 So. 2d 1060, 1066 (Ala. 2005).

---

[10] EDC also cites to the credit agreement for the interest due in addition to the principal damages. However, for those reasons explained *supra*, such is not recoverable.

See also e.g., Allied Sales and Service Co. v. Global Indus. Tech., Inc., 2000 WL 726216, *5 (S.D. Ala. May 1, 2000) (discussing the applicability of the UCC to a contract); *AmSouth Bank v. Tice*, 923 So. 2d 1060, 1066 (Ala. 2005) ("[t]he fact that a remedy has been provided by the UCC for the very same acts or omissions made the basis of [plaintiff's] common-law claims compels the conclusion that those common-law claims are duplicative and have been displaced by his UCC claims[]"); Clarke-Mobile Counties Gas Dist. v. Prior Energy Corp., 834 So.2d 88, 91-92 (Ala. 2002) (finding the UCC "provides the substantive law[]" to resolve a motion for summary judgment in a breach of contract for the sale of goods case).[11]

Given the case law *supra*, and the fact that the very same acts or omissions have been made the basis of both EDC's common law breach of contract claim and its UCC action for the price claim, EDC's

---

[11] Per Sparks v. Total Body Essential Nutrition, Inc., 27 So.3d 489, 502-503 (Ala. Jul. 17, 2009):

> "[t]he Uniform Commercial Code was drafted against the backdrop of existing bodies of law, including the common law and equity, and relies on those bodies of law to supplement its provisions in many important ways. At the same time, the Uniform Commercial Code is the primary source of commercial law rules in areas that it governs, and its rules represent choices made by its drafters and the enacting legislatures about the appropriate policies to be furthered in the transactions it covers. Therefore, while principles of common law and equity may *supplement* provisions of the Uniform Commercial Code, they may not be used to *supplant* its provisions, or the purposes and policies those provisions reflect, unless a specific provision of the Uniform Commercial Code provides otherwise. In the absence of such a provision, the Uniform Commercial Code preempts principles of common law and equity that are inconsistent with either its provisions or its purposes and policies."

Official Comment to § 7–1–103, Ala.Code 1975. "Under § 7–1–103, prior existing law supplements the various code sections 'unless displaced by the particular provisions of this title.' It is clear from this that if the particular code provisions *do displace* prior law, the code prevails." *Toomey Equip. Co. v. Commercial Credit Equip. Corp.,* 386 So.2d 1155, 1159 (Ala.Civ.App.1980). In other words, the UCC is to be supplemented by the existing principles of law and equity if no precise provision of the UCC applicable to the issues presented contradicts those principles. See *H.C. Schmieding Produce Co. v. Cagle,* 529 So.2d 243 (Ala.1988).

See e.g., Hughes Developers, Inc. v. Montgomery, 903 So.2d 94, 102 (Ala. 2004) (discussing displacement of common law remedies by the UCC). See also, Forage Genetics Intl, LLC v. Kelly Green Mexicana, Inc., 2019 WL 3802021, *2 (N.D. Tex. Jun. 17, 2019): "When the UCC applies, it displaces all common law rules of law regarding breach of contract and substitutes instead those rules of law and procedures set forth in the UCC." *J.D. Fields,* 426 F. App'x at 276 (internal citation omitted). "However, common law principles of law and equity continue to supplement its provisions." *Id.* (citing *Crest Ridge Constr. Group, Inc. v. Newcourt Inc.*, 78 F.3d 146, 152 (5th Cir. 1996))."

common law breach of contract claim has been displaced by the UCC, as a matter of law.[12]  As such, EDC's motion on its common law breach of contract claim is **DENIED** as **MOOT.**

**C.**   <u>**Damages**</u>

Having established liability, the Court now turns to the damages EDC may recover against Shore Acres for an action for the price claim. EDC seeks the price of goods accepted **($275,981.89),** plus interest of 1.5% per month (**$54,240.18**) in interest per Alabama law, the credit agreement, and the invoices, as well as attorneys' fees and costs.

<u>First</u>, as indicated *supra*, based on the oral contract and invoices, and as Shore Acres' liability has been established due to non-payment, the Court **GRANTS** EDC's motion as to its ability to recover the price of the goods accepted per Section 7-2-709, and such is awarded in the amount of **$275,981.89.**

<u>Second</u>, regarding interest and attorneys' fees/costs, for those reasons specified *supra*, the Court cannot rely on the credit agreement as proposed by EDC, as it cannot be the basis of the action under 7-2-709.  Rather the UCC provides that "[w]hen the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under Section 7–2–710, the price ... [o]f goods accepted ." <u>Ala</u>. <u>Code</u> § 7–2–709(1)(a).

 "Incidental damages described in §7–2–710 are those incurred in connection with stopping delivery, transportation, care and custody of goods after the buyer's breach, or the return or resale of the goods…." <u>In re Phoenix Turf Farms, LLC</u>, No. 07-40545-JJR-12, 2009 WL 3350337, at *4 (Bankr. N.D. Ala. Oct. 15, 2009).  There is no evidence that any of these incidental damages are present in this case. Moreover, EDC has presented no authority that interest is an incidental damage under the UCC.

However, "[u]nder § 7–1–103, Ala.Code 1975, common-law principles are intended to supplement the UCC, unless those common-law principles are displaced by a particular provision or provisions of the

---

[12] Alabama adopted the UCC. Ala. Code § 7-2-101 *et seq.*

UCC." <u>Fitts v. AmSouth Bank</u>, 917 So. 2d 818, 824 (Ala. 2005). Section 8-8-8 of the Alabama Code provides that "[a]ll contracts, express or implied, for the payment of money ... bear interest from the day such money ... should have been paid." Section 8-8-1 further provides that the maximum statutory rate of prejudgment interest is 6% per annum. Because prejudgment interest is not addressed or displaced by any particular provision of the UCC, it appears EDC may be entitled to prejudgment interest. "Indeed, the law requires that prejudgment interest be applied to those damages that are capable of being ascertained with 'ease and certainty' or by 'a simple mathematical computation.'" <u>Ballard v. Lee A. McWilliams Constr., Inc.</u>, 258 So. 3d 336, 339 (Ala. Civ. App. 2018) (citations omitted). However, the interest rate to be applied is a maximum of 6% per annum, not 1.5% monthly. Thus, EDC's motion seeking to recover **$54,240.18** in interest, is **DENIED. The Court will hold issuing judgment for 7 days to allow EDC to amend its motion to set forth accurate calculations of interest under the statute and to cite authority that the damages in this case are easily ascertainable.**

The Court now turns to the **$3,920.00** in attorneys' fees and **$502.00** in costs that EDC seeks to recover. "Alabama follows the American rule, whereby attorney fees may be recovered if they are provided for by statute or by contract...." *Jones v. Regions Bank,* 25 So.3d 427, 441 (Ala.2009) (citations omitted). Based exclusively on the terms of the credit agreement,[13] EDC seeks $3,920 in attorneys' fees for 11.2 hours at a rate of $350/hour for work performed in this case plus $502 in costs. (Doc. 1; Doc. 13-2 (Decltn. Rozendaal); Doc. 13-6 (Declaration of Sean J. Lowe); Doc. 1-3). However, for those reasons detailed *supra*, the credit agreement does not provide a basis from which EDC may recover for its UCC action for the price. This means that EDC's ability to recover fees and/or costs depends on whether such is recoverable under the UCC.

---

[13] The agreement provides: "[a]pplicant signing this agreement agrees to bear all costs incurred in collecting any unpaid amounts including but not limited to collection suit fees, legal fees and court costs."

In the binding case of East Girard Sav. Ass'n v. Citizens Nat. Bank and Trust Co. of Baytown, 593 F.2d 598, 604 (5th Cir. 1979), the Fifth Circuit reversed a district court's ruling that attorneys' fees were awardable -- by relying on the UCC's incidental damages statute -- finding  error because "[t]hat statute does not expressly mention attorney's fees as a recoverable item[]").  Additionally, a fellow district court within the Eleventh Circuit, Onuss Ortak Nokta Uluslararasi Haberlesme Sistem Servis Bilgisayar Yazilim Danismanlik ve Dis Ticaret Limited Sirketi v. Terminal Exchange, LLC, 2011 WL 13173572, *4 (S.D. Fla. Jul. 26, 2011), concluded: "[w]ith respect to an award of professional expenses, Plaintiff does not cite any cases supporting such an award, and in light of the wording of section 672.710, the Court finds that the monetary value of the hours expended by Plaintiff's representatives are not recoverable[]").[14]  See also e.g., Wyman-Gordon Investment Castings, Inc. v. Rutenberg, 2020 WL 3266218, *7 (M.D. Fla. Mar. 25, 2020) (incidental damages do not include attorneys' fees).  Thus, that portion of EDC's motion seeking **$3,920.00** in attorneys' fees and **$502.00** in costs is **DENIED.**

**DONE** and **ORDERED** this the **16th** day of **March 2021.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[14] While addressing Florida's UCC, the code section referenced mirrors Alabama's.